Filed 9/12/14  Pahnos v. City of Laguna Beach CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID PAHNOS et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>CITY OF LAGUNA BEACH,<br><br>    Defendant and Respondent. | G049141<br><br>(Super. Ct. No. 30-2012-00594010)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert Monarch, Judge (retired Judge of the Orange Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).  Affirmed.

Mollis & Mollis and Charles A. Mollis for Plaintiffs and Appellants.

Rutan & Tucker, Philip D. Kohn, and Ajit S. Thind for Defendant and Respondent.

\*        \*        \*

Plaintiffs David Pahnos and Barry Stephens appeal from a judgment of dismissal after the court granted the motion of defendant City of Laguna Beach (the City) for judgment on the pleadings. On appeal plaintiffs contend the court erred by (1) granting the City's motion for judgment on the pleadings, (2) denying plaintiffs' request for leave to amend their complaint, and (3) denying plaintiffs' request for judicial notice. We affirm.

FACTS

In a January 20, 2012 letter to plaintiffs, the City recounted the history that (1) plaintiffs' neighbors had filed a hedge height claim against them in 2010 due to the vegetation at plaintiffs' home in the City, (2) hearings were held by landscape architect James Dockstader, the design review board, and the city council, and (3) the city council had ordered plaintiffs to keep certain hedges and vegetation below a specified height and to remove two trees. The City's letter informed plaintiffs they had 90 days to comply with the city council's order, and stated, "Thereafter, the City Attorney may decide on a number of avenues to pursue enforcement, including . . . administrative citation, nuisance abatement, civil action, or criminal citation."

On February 1, 2012, plaintiffs submitted a claim (Claim) against the City on the City's official one-page form for claims under Government Code section 911.2,[1] asserting that the alleged damage or injury occurred on January 17, 2012 at their home. To the form's question, "How and under what circumstances did damage or injury occur?", plaintiffs answered, "City has repeatedly persecuted Claimants, including

---

[1] All statutory references are to the Government Code unless otherwise stated.
Plaintiffs each filed a separate claim, but both claims were identical. Because the claims were identical, we refer to them as a single claim.

Criminal Charges that were dismissed by Order of the Court on January 17, 2012 — Favorable Termination." To the form's question, "What particular action by the City, or its employees, caused the alleged damage or injury?", plaintiffs answered, "City has repeatedly persecuted Claimant making unsupported Demands and instituting Criminal Charges that were each favorably concluded in Claimant's favor — dates are on October 6, 2010 (Trees found to be conforming); October 4, 2011; January 17, 2012; with the latest Wrongdoing evidenced by the City's Letter dated January 20, 2012 again threatening prosecution for the same issue previously decided in Claimant's favor three times." Plaintiffs each claimed $5 million for "Malicious Prosecution, Abuse of Process, and Intentional Infliction of Emotion [*sic*] Distress." To the instruction, "List names and addresses of witnesses, doctors and hospitals," plaintiffs answered, "City Council for City of Laguna Beach; Administrative Hearing Officers Dockstader and Kusunoki; and Other persons listed in Voluminous Documents relating to Dismissed Criminal Charges."

In March 2012, the City denied plaintiffs' Claim.

Plaintiffs' complaint, filed August 27, 2012, alleged the City failed to discharge a mandatory duty.[2] Plaintiffs alleged the City's "Safety Element" in its general plan, whose stated objective "is to reduce loss of life, injury, damage to property and economic and social dislocation resulting from future natural and manmade hazards," imposes a duty on the City "to evaluate safety in areas where Trees and Vegetations on Slopes within the CITY are subject to removal and/or modification." Plaintiffs further alleged the City sought to selectively enforce on them its hedge height ordinance by requiring modifications to plaintiffs' slope and vegetation, and had ignored reports of a safety engineer and a horticulturist warning "of the severe Safety Risk to Life and Property at Plaintiffs' Home that rests on a hillside and has a history of subsidence, flooding and mudslides . . . ." Plaintiffs further alleged the City had filed multiple

---

[2] The complaint also alleged the City violated plaintiffs' federal civil rights, but plaintiffs later withdrew that cause of action.

3

criminal pleadings in violation of its mandatory duties. Plaintiffs further alleged they had "complied with the Claims requirements of [section] 905, where the City denied Plaintiffs' [Claim] by Letter of March 5, 2012. This Complaint has been filed within six (6) months of the Denial of [Claim] by Defendant CITY; it is based upon the same fundamental events set out in the [Claim] referring to 'Voluminous Documents.'"

The City moved for judgment on the pleadings on grounds (1) its general plan's safety element "does not impose a mandatory duty upon the City as required for liability under the Government Claims Act," and "even if it did, the alleged mandatory duty was not designed to protect [plaintiffs] from the emotional distress damages they claim," (2) "the City is shielded from liability pursuant to multiple statutory immunities," and (3) plaintiffs failed to comply with the procedural requirements of the Government Claims Act (§ 810 et seq.) (the Act).

The court granted the City's motion for judgment on the pleadings and ordered the dismissal of plaintiffs' complaint.

DISCUSSION

*The Court Properly Granted the City's Motion for Judgment on the Pleadings Because Plaintiffs Failed to Satisfy the Requirements of the Act*

Plaintiffs argue the court erred by granting the City's motion for judgment on the pleadings. They contend their Claim provided sufficient facts to enable the City to investigate the cause of action for breach of mandatory duty alleged in their complaint. They conclude their Claim sufficed to permit the filing of their complaint in compliance with the Act.

The court granted the City's motion for judgment on the pleadings on the ground, inter alia, that plaintiffs' Claim "did not give notice that Plaintiffs were going to sue for breach of a mandatory duty under the Safety Element. The breach of duty alleged

4

in [plaintiffs' Claim] is the duty not to prosecute the plaintiffs for violation of the hedge height ordinance." The court concluded, "There is nothing in [plaintiffs' Claim] that would give the [City] reason to investigate whether its duties under the Safety Element had been breached."

"A motion for judgment on the pleadings, like a general demurrer, challenges the sufficiency of the plaintiff's cause of action and raises the legal issue, regardless of the existence of triable issues of fact, of whether the complaint states a cause of action." (*Brownell v. Los Angeles Unified School Dist.* (1992) 4 Cal.App.4th 787, 793.) When considering a trial court's decision to sustain a motion for judgment on the pleadings, the reviewing court applies the same standard of review applicable to a general demurrer. (*Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187.) The reviewing court reviews the complaint "'de novo to determine whether [the complaint] alleges facts sufficient to state a cause of action under any legal theory.'" (*DiPirro v. American Isuzu Motors, Inc.* (2004) 119 Cal.App.4th 966, 972.) "If the appealed judgment or order is correct on any theory, then it must be affirmed regardless of the trial court's reasoning . . . ." (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1201.)

The Act requires that governmental entities be notified of claims against them. Accordingly, before a lawsuit for damages can be brought against a public entity, the individual claiming injury is first required to file a claim with the entity. (§ 945.4.) Only after the claim has been acted upon or rejected by the entity can the individual bring suit in court. (*Ibid.*) For personal injury claims, the individual must file the required claim within six months of the stated injury. (§ 911.2, subd. (a)).

"The policy underlying the [Act] is to afford prompt notice of claims to governmental entities. [Citation.] The courts and commentators have considered prompt notice important for several reasons: to allow (1) early investigation of the facts, (2) informed fiscal planning in light of prospective liabilities, (3) settlement of claims before

the initiation of costly civil litigation, and (4) avoidance of similarly caused future injuries or liabilities." (*Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 123.) "[F]ailure to file a claim [in accordance with the Act] is fatal to a cause of action" on the claim (*Pacific Tel. & Tel. Co. v. County of Riverside* (1980) 106 Cal.App.3d 183, 188), even if the public entity has "'actual knowledge of the circumstances surrounding'" the alleged injury (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738).

And, even if a claim is filed in compliance with the Act, its contents must correlate sufficiently with each cause of action in a complaint. (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 448.) Otherwise, a *variance* between a claim and a complaint can be fatal to the complaint. (*Ibid.*) Although a "claim need not contain the detail and specificity required of a pleading," it must "'*fairly* describe what [the] entity is alleged to have done.'" (*Id.* at p. 446, italics added.) In other words, "the *facts underlying each cause of action* in the complaint must have been *fairly reflected* in a timely claim." (*Id.* at p. 447, italics added.) The claim must notify the public entity of the plaintiff's "cause of action, in compliance with section 954.4's command that each 'cause of action' be presented by notice of claim." (*Stockett*, at p. 447.) Separate causes of action must "be separately presented under section 945.4." (*Ibid.*)

In *Fall River Joint Unified School Dist. v. Superior Court* (1988) 206 Cal.App.3d 431, the appellate court issued a writ of mandate directing the trial court to grant the defendant's motion for judgment on the pleadings (*id.* at p. 437) on the ground that the "plaintiff failed to file a Government Code tort claim describing the facts giving rise to the alleged liability" (*id.* at p. 433). The plaintiff's *claim* stated he was hurt when a school door closed with force and slammed his head against the door frame due to the door's "dangerous and defective condition." (*Id.* at p. 434.) A cause of action in the plaintiff's *complaint* sought "damages on the theory that school district personnel negligently failed to supervise students who were engaged in 'dangerous horse-play.'"

6

(*Ibid.*)  The Court of Appeal found this cause of action "patently attempt[ed] to premise liability on an entirely different factual basis than what was set forth in the tort claim," creating a variance fatal to the plaintiff's pleading.  (*Id.* at p. 435.)

*Nelson v. State of California* (1982) 139 Cal.App.3d 72 also involved a fatal variance.  There, the plaintiff, a state prison inmate (*id.* at p. 75), filed a claim against the State of California, alleging the Department of Corrections failed "'to diagnose and treat or allow [him] to maintain his ongoing medications'" (*id.* at p. 80).  The plaintiff's complaint, however, alleged a different cause of action, i.e., "failure on the part of any employee to summon immediate and competent medical care."  (*Ibid.*)  The trial court sustained the State of California's demurrer.  (*Id.* at p. 81.)  The Court of Appeal affirmed the trial court's ruling and judgment of dismissal, holding the facts and theory of liability alleged in the complaint were "*not* equivalent" to those described in the initial claim.  (*Ibid.*)  The appellate court stated, "Failure of a practitioner to prescribe or provide necessary medication . . . cannot be characterized as a failure to summon medical care."  (*Ibid.*)  *Nelson* further held the "plaintiff's claim, as a matter of law, failed to recite the requisite facts to support the theory and the allegations of" his complaint. (*Ibid.*; see also *Donahue v. State of California* (1986) 178 Cal.App.3d 795, 804 [permitting uninsured motorist to take driving test is not "factual equivalent" of failure to control or direct motorist in the course of the test].)

Here, the court correctly granted the City's motion for judgment on the pleadings because plaintiffs' Claim failed to afford the City notice of the injuries later alleged in plaintiffs' complaint.  Plaintiffs' Claim alleged the City "repeatedly persecuted [them], including Criminal Charges," and committed "Malicious Prosecution, Abuse of Process, and Intentional Infliction of Emotion [*sic*] Distress" against them.

In contrast, the injuries alleged in plaintiffs' complaint are built on an entirely different set of facts and on a disparate theory of liability.  The complaint stated

the City refused to acknowledge the "Safety Risk to Life and Property at Plaintiffs' Home" and failed "to comply with the Safety Element of the [City's] General Plan."

The complaint's theory of liability — failure to discharge a mandatory safety duty — is absent from plaintiffs' Claim. For example, plaintiffs' Claim never mentioned the City's general plan, the plan's safety element, any mandatory duty of the City, or any words relating to safety, landslides, or subsidence. The causes of action specified in plaintiffs' Claim did not include the failure to discharge a mandatory safety duty.[3] In sum, plaintiffs' Claim failed to fairly reflect the facts underlying the cause of action alleged in their complaint.

But plaintiffs assert their Claim did raise the issue of the City's duty under the safety element merely by mentioning the dates October 4, 2010 and October 6, 2011, and referring to "Voluminous Documents relating to Dismissed Criminal Charges." On appeal they assert the safety element issue was addressed at administrative hearings on those dates. This assertion, however, is never stated (or even hinted at) in plaintiffs' Claim. Rather, plaintiffs' Claim states that the City's persecution of, and demands and criminal charges against, plaintiffs were favorably resolved in plaintiffs' favor on "October 6, 2010 (Trees found to be conforming); October 4, 2011; January 17, 2012, with the latest Wrongdoing evidenced by the City's Letter dated January 20, 2012 again threatening prosecution for the same issue previously decided in Claimant's favor three times." Furthermore, plaintiffs' Claim referred to "Voluminous Documents relating to Dismissed Criminal Charges" only with respect to witnesses listed in those documents. And, the Claim never identified any such documents with specificity. Moreover, the City had no obligation to review "voluminous" documents relating to multiple hearings in

---

[3] Plaintiffs argue they were not required under section 910 (which specifies the required contents of a claim) or the City's claim form to specify a cause of action. Nonetheless, plaintiffs chose to specify three causes of action in their Claim, thereby giving the City notice of the specific alleged torts to be investigated and evaluated.

order to ferret out potential claims against it. Rather, plaintiffs bore the duty to give the City a forthright succinct description of their claim — in other words, fair notice of their cause of action.

In a related argument, plaintiffs argue the City had actual knowledge of the cause of action described in their complaint because the safety duty and general plan were both mentioned during an administrative hearing on October 6, 2010, and in a motion to dismiss criminal charges. But whether the City had actual knowledge is irrelevant in assessing the sufficiency of plaintiffs' Claim. (*City of San Jose v. Superior Court* (1974) 12 Cal.4th 447, 455 [actual knowledge "constitutes neither substantial compliance [with the Act] nor basis for estoppel"].)

Plaintiffs contend they *substantially complied* with the notice of claim requirement. But the "judicially formulated 'substantial compliance' exception to the strict claims requirement" is inapplicable "where the plaintiff seeks to impose upon the defendant public entity the obligation to defend a lawsuit based upon a set of facts entirely different from those first noticed. Such an obvious subversion of the purposes of the claims act, which is intended to give the governmental agency an opportunity to investigate and evaluate its potential liability, is unsupportable." (*Fall River Joint Unified School Dist. v. Superior Court, supra*, 206 Cal.App.3d at pp. 435-436.) Here, the City had no warning that it might be sued by plaintiffs for failing to consider and apply the safety element until plaintiffs filed their complaint. Accordingly, plaintiffs "did not even rise to the level of minimal, much less substantial, compliance with the claim filing prerequisites." (*Id.* at p. 436.)

Finally, plaintiffs claim the City waived an opportunity to challenge the complaint (thus proscribing the trial judge from granting the motion for judgment on the pleadings) because the City did not "give notice of insufficiency of the claim" as required by section 910.8. The City's argument on appeal, however, is not that plaintiffs' Claim

9

failed to meet section 910's statutory requirements, but rather, that plaintiffs' complaint alleged a different injury based on a separate set of facts.

Because the complaint alleges a theory of liability predicated on a separate set of facts than described in plaintiffs' Claim, the City was *not* given the notice required under *Minsky v. City of Los Angeles*, *supra*, 11 Cal.3d at page 123.  Plaintiffs' complaint was therefore barred under the Act.

*The Court Did Not Abuse Its Discretion by Denying Plaintiffs Leave to Amend*

Plaintiffs sought leave to amend their complaint to "make it more clear to the court."  The court denied their request.  On appeal plaintiffs contend an amended complaint "could easily have clarified the basis of the claim form."

We review for an abuse of discretion a court's denial of leave to amend the complaint after granting a motion for judgment on the pleadings.  (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602.)  A court may grant a motion for judgment on the pleadings (*Baughman*, *supra*, 38 Cal.App.4th at p. 187) without leave to amend if it is "probable from the nature of the complaint . . . that the plaintiff cannot state a cause of action" (*Kingsbury v. Tevco, Inc.* (1978) 79 Cal.App.3d 314, 318).

Here, plaintiffs argue they could amend their complaint to show how the dates stated in their Claim correlate to the safety element.  Plaintiffs cannot amend their Claim, however.  Thus, their failure to file a claim with the City regarding their mandatory duty cause of action precludes them from bringing suit on those grounds.

Nor can plaintiffs amend their complaint to include a new cause of action without first filing a new claim with the City.  But the statute of limitations on filing a claim has passed.  (§ 911.2, subd. (a) [six months for death and injury to person, personal property, and crops; 12 months for other causes of action].)

The statute of limitations has likewise passed on amending the complaint to include the theories of liability included in plaintiffs' Claim.  (§ 945.6(a)(1).)  The City

10

informed plaintiffs in March 2012 that it was denying their Claim. From that date, plaintiffs had six months to file suit in court. (§ 945.6, subd. (a)(1).) Because the judgment denying leave to amend was announced more than a year after the denial of plaintiffs' Claim, plaintiffs were left without a cause of action to include in amended pleadings.

*The Court Properly Denied Plaintiffs' Request for Judicial Notice*

Concurrently with an opposition to the City's motion for judgment on the pleadings, plaintiffs filed a request for judicial notice (Evid. Code, § 452 [non-mandatory matters]) of their motion to dismiss criminal charges filed on December 8, 2011 (Dismissal Motion). Plaintiffs provided no explanation for their request, other than that the Dismissal Motion "contains exhibits," and, according to plaintiffs, was "referred to" in their Claim. The court denied the request due to plaintiffs' "failure to address the documents in the opposition or explain the significance of any one of the 191 pages to the Court."

On appeal plaintiffs argue their Dismissal Motion was relevant because it attached, as exhibit 15 thereto, the City's general plan and safety element. They also argue, without elaboration, that the "same dates in the [Claim] are the same dates in the [Dismissal Motion]."

A court may decline to judicially notice evidence irrelevant to the matter before the court. (Evid. Code, § 350 [only relevant evidence is admissible]; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089, fn. 4.) Here, the court denied plaintiffs' judicial notice request because plaintiffs failed to explain the relevance of the Dismissal Motion and its exhibits. Furthermore, plaintiffs had already attached the safety element of the City's general plan (the document they claim was the relevant portion of the Dismissal Motion) to their initial complaint.

11

Plaintiffs have failed to meet their burden to show their request for judicial notice was "so persuasive that no reasonable judge would have refused to take judicial notice of the matter." (*Willis v. State of California* (1994) 22 Cal.App.4th 287, 291.) The court properly declined to take judicial notice of plaintiffs' Dismissal Motion.

DISPOSITION

The judgment is affirmed. The City of Laguna Beach shall recover costs incurred on appeal.

IKOLA, J.

WE CONCUR:

ARONSON, ACTING P. J.

FYBEL, J.

12